IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LUIS ERAZO ROJAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. EP-25-CV-443-KC |
| | § | |
| KRISTI NOEM et al., | § | |
| | § | |
| Respondents. | § | |

## ORDER

On this day, the Court considered Luis Erazo Rojas' Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

## I.    BACKGROUND

This case involves Erazo Rojas' challenge to Respondents' decision to detain him without a bond hearing after he had been released from immigration custody for over two years. The following facts are derived from the allegations in the Petition and documents attached thereto. Respondents submitted no evidence or factual allegations of their own. *See generally* Resp., ECF No. 4.

### A.    Arrival in the United States & Immigration Proceedings

Erazo Rojas is a Columbian citizen who entered the United States on February 13, 2023, without inspection. Pet. ¶¶ 2, 17–18. Shortly after entering the country, Erazo Rojas was placed in removal proceedings after a credible fear finding. *Id.* ¶¶ 4, 18; *id.* Ex. 1 ("Notice to Appear") 1, ECF No. 1-1. He was then released from custody. Reply 2, ECF No. 6; Notice to Appear 1. On September 5, 2023, Erazo Rojas submitted an application for asylum. Pet. ¶¶ 4, 20. His immigration case is pending and the final hearing on his asylum application is scheduled for

February 16, 2028.  *Id.* ¶¶ 4, 21; *id.* Ex. 2 ("Notice of In-Person Hearing"), ECF No. 1-2.  Erazo

Rojas was arrested on September 25, 2025, and is currently detained at the El Paso Camp East

Montana facility in El Paso, Texas.  Pet. ¶¶ 1, 5.  The record does not reveal whether Erazo

Rojas has requested a bond hearing since being re-detained.  *See generally*, Pet.; Reply; *see also*

Resp. 4.

### B.    Procedural History

On October 3, 2025, Erazo Rojas filed a Petition for a Writ of Habeas Corpus, asking the

Court to order a bond hearing before an immigration judge.  Pet. 15.  Erazo Rojas challenges the

legality of his detention on constitutional and statutory grounds.  *Id.* ¶¶ 28–64.

In addition to the Petition, the Court has received Respondents' Response and Erazo

Rojas' Reply.  Because the Court grants in part the Petition, while taking as true the facts as

presented by Respondents, it is unnecessary to hold a hearing.  *See Tijerina v. Thornburgh*, 884

F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires

the court to "summarily hear and determine the facts," the court need not hold an evidentiary

hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the

legal implications of undisputed facts").

## II.    DISCUSSION

In his Petition, Erazo Rojas claims that (1) he is not subject to mandatory detention under

8 U.S.C. § 1225(b) and (2) his continued detention violates his right to procedural due process

under the Fifth Amendment.  Pet. ¶¶ 28–64.

Respondents make three arguments in opposition: (1) the Court lacks subject matter

jurisdiction; (2) Erazo Rojas is subject to mandatory detention without a bond hearing under 8

U.S.C. § 1225(b)(1); and (3) Erazo Rojas is not entitled to any more process than what the statute provides. Resp. 4–11.

This Court recently decided three other petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See Martinez v. Noem*, No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A.    Jurisdiction

First, Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 9–10. They appear to bolster their § 1252(b)(9) argument through an appeal to § 1225(b)(4), arguing that "[e]ven if the alien claims he is not appropriately categorized as an applicant for admission subject to § 1225(b), such a challenge must be raised before an immigration judge in removal proceedings." *Id.* at 9. Thus, Respondents argue, a challenge to mandatory detention under § 1225(b) is "inextricably intertwined with the removal proceedings themselves," and must be channeled to the circuit court. *Id.*

The Court already rejected essentially the same arguments. *See Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). And other courts have agreed with those

analyses.  *See, e.g.*, *Vieira v. Anda-Ybarra*, --- F. Supp. 3d ----, 2025 WL 2937880, at *5 (W.D. Tex. Oct. 16, 2025).  In their briefing, Respondents fail to distinguish those prior jurisdictional analyses.  Resp. 9–10.  And their appeal to § 1225(b)(4) does not alter the Court's prior conclusion that § 1252(b)(9) does not bar it from hearing a habeas petitioner's challenge to their detention.  Not only does § 1225(b)(4) not speak to the distinction between detention and deportability that this Court has explained is essential to the jurisdictional analysis, but it is also entirely inapplicable here.  Section 1225(b)(4) addresses an immigration officer's challenge to another officer's favorable determination that a noncitizen is admissible.  But here, Respondents adamantly contend that Erazo Rojas is an "applicant for admission" who has not received a favorable determination of his admissibility.  *See id.* at 6.

In sum, the Court finds that it has jurisdiction to consider Erazo Rojas' challenge to his detention.

### B.    Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Erazo Rojas falls within it.  Pet. ¶¶ 31–50; Resp. 5–9; Reply 2–5.  In recent months, courts across the country have held that this interpretation is either incorrect or likely incorrect.  *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

Nevertheless, the Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Erazo Rojas is entitled to due process and succeeds in his as-applied challenge.

### C.    Procedural Due Process

Respondents argue that Erazo Rojas "has not raised any colorable claim that his mandatory detention under § 1225(b)(1) is unconstitutional as applied to him." Resp. 3.   They argue that, even as a matter of due process, Erazo Rojas "is not entitled to more process than what Congress provided him by statute." *Id.* at 10.  This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) and other recent Supreme Court precedent.  *See id.* at 10–11.  The Court has already rejected such a reading.  *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10.  And other courts have agreed with this analysis.  *See, e.g.*, *Vieira*, 2025 WL 2937880, at *5.

Respondents also appear to argue that Erazo Rojas received sufficient due process because he was found to have a credible fear of persecution and was placed in full removal proceedings, where "constitutional protections are built in[]." Resp. 10–11.  However, the process Erazo Rojas has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### 1.    Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Erazo Rojas does not acquire a liberty interest until his detention becomes unreasonably prolonged, because he is mandatorily detained under § 1225(b) and does not have a statutory right to a bond hearing. Resp. 11. This Court has previously held that that once released from immigration custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Lopez-Arevelo*, 2025 WL 2691828 at *10–11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)); *accord M.S.L.*, 2025 WL 2430267, at *8 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)).

Because he was released from immigration custody and spent over two years at liberty in the United States, Erazo Rojas possesses a strong interest in his continued freedom from detention.

### 2.    Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)). Although the record does not reveal whether Erazo Rojas has requested a bond hearing, it is likely that such a request would be futile because in recent cases, IJs have "declined to exercise jurisdiction, finding that [the petitioner was] subject to mandatory detention under § 1225." *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Espinoza v. Kaiser*, No. 25-cv-1101, 2025 WL 2581185, at *11 (E.D. Cal. Sept. 5, 2025)). Thus, there is a high risk that Erazo Rojas will continue to be erroneously deprived of his liberty.

Respondents argue that the process afforded to Erazo Rojas in his removal proceedings is sufficient due process. Resp. 11. As discussed above, insofar as those procedures relate to Erazo Rojas' removal and not his detention, they do not ameliorate the risk that he will be erroneously deprived of his liberty while his removability is assessed. Respondents appeal to the humanitarian parole process, which although "sparsely granted in only the most extenuating circumstances," still provides Erazo Rojas a vehicle to seek his release. *Id.* at 12. This Court has previously held that deficiencies in the humanitarian parole process, including the lack of a neutral arbiter, a statement of reasons, or an appeal process, create a high risk that a noncitizen will be erroneously deprived of their liberty. *See Santiago*, 2025 WL 2792588, at *11.

In terms of available alternatives and their probable benefits, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation

omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3).  Indeed, under "decades of DHS's own practices" prior to 2025, noncitizens "who are present without having been admitted or paroled" just like Erazo Rojas, received bond hearings.  *Chogllo Chafla v. Scott*, Nos. 25-cv-437, -438, -439, 2025 WL 2688541, at *8 (D. Me. Sept. 22, 2025) (citations omitted).  This is precisely the type of proceeding that would give Erazo Rojas an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty.  Therefore, the second *Mathews* factor weighs in favor of Erazo Rojas.

### 3.     Government's Interest

Respondents do not identify their interest in detaining Erazo Rojas without a bond, other than perhaps their general interest in enforcing the INA as they interpret it.  *See* Resp. 5–9.  But again, assuming Respondents' interpretation of the statute is correct, Erazo Rojas' constitutional interest in his liberty exists above and apart from the INA.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted).  Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community.  But the decision to release Erazo Rojas more than two years ago while his removal proceedings were pending, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018).  While there is no evidence in the record indicating that Erazo Rojas would be a flight risk or a danger to the community, if any such concerns exist, they would be squarely addressed through a bond hearing.  *See Martinez II*, 2025 WL 2598379, at *4.  Thus, the third *Matthews* factor also weighs in favor of Erazo Rojas.

Since all *Mathews* factors support Erazo Rojas' position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution.  Thus, he is entitled to a bond hearing.  *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at \*13.

### D.    Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[1] *Id.* at \*12 (collecting cases).  The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk.  *Id.* at \*13 (collecting cases); *Velasco Lopez v. Decke*r, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted).  This is so "[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally."  *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)).  Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner.[2]  *See, e.g.,*

---

[1] Respondents argue that "this Court lacks jurisdiction under habeas to order an immigration judge to hold a bond hearing." Resp. 3.  But Respondents do not cite to any authority for this proposition, and the Court is not aware of any.  Given that that majority of courts have granted such relief, *see Lopez-Arevelo*, 2025 WL 2691828, at \*13 (collecting cases), and that district courts have flexibility in fashioning habeas remedies, *see Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005), the Court finds that it has the authority to order a bond hearing as a habeas remedy.

[2] The Court takes judicial notice that at least one IJ in the El Paso area has apparently disclaimed jurisdiction to adjudicate bond hearings on the merits even when ordered to do so by a United States District Court.  *See* Status Report, *Souza Vieira v. De-Anda Ybarra*, No. 3:25-cv-432-DB (W.D. Tex. Oct. 21, 2025), ECF No. 17.  Again, the Court affords agency decisionmakers the opportunity to determine

*Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025)

(collecting cases).  The Court follows this consensus and orders the same remedy here.

## III.    CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is

**GRANTED IN PART**.  The Court **ORDERS** that, **on or before November 6, 2025**,

Respondents shall either: (1) provide Erazo Rojas with a bond hearing before an IJ, at which the

Government shall bear the burden of justifying, by clear and convincing evidence of

dangerousness or flight risk, Erazo Rojas' continued detention; or (2) release Erazo Rojas from

custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before November 6, 2025**, Respondents shall

**FILE** notice informing the Court whether Erazo Rojas has been released from custody.  If Erazo

Rojas has not been released from custody, Respondents shall inform the Court whether and when

a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further

inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the November 6, 2025, deadlines.**

**SO ORDERED**.

**SIGNED this 30th day of October, 2025.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

whether Erazo Rojas is a danger or flight risk.  But if they decline that opportunity, then Erazo Rojas must
be promptly released.